# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **MIRANDA WAITES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 5:14-CV-2181-CLS |
| ) | |
| **LIMESTONE CORRECTIONAL** ) | |
| **FACILITY,** *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDERS

Plaintiff Miranda Waites commenced this action on her own behalf, as well as on behalf of the estate of Mark Tinsley, a former prisoner at Limestone Correctional Facility. Her complaint asserts several claims under the Eighth Amendment — *e.g.*, deliberate indifference to her decedent's serious medical needs — as well as state law claims for wrongful death and negligent and wanton retention of employees. The claims are asserted against the correctional facility in which plaintiff's decedent was incarcerated, and several officers and employees of the State of Alabama's Department of Corrections. The action presently is before the court on the motion to dismiss filed by defendants Dewayne Estes, Ruth Naglich, Guy Noe, Jimmy Patrick,

and Kim T. Thomas for failure to state a claim upon which relief can be granted.[1] Upon consideration of the pleadings and briefs, this court concludes that the motion should be granted in part and denied in part.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."

---

[1] *See* doc. no. 14 (Motion to Dismiss), at 1. Defendants not included in the motion include "Dr. Stubbs," "Nurse Jackson," "Nurse Lopez," "Nurse Shalah," and Corizon.

*Id.*, at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*, at 557 (brackets omitted).

      Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

      In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations.  *When there are well-pleaded factual allegations*, *a court should assume their veracity and then*

*determine whether they plausibly give rise to an entitlement to relief.* *Iqbal*, 556 U.S. at 678–79 (emphasis added).

When ruling upon a motion to dismiss, the court must assume that the well-pleaded facts set forth in the plaintiff's complaint are true. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (1994) (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true") (alteration supplied). Accordingly, that which is set out in the following portions of this memorandum opinion as "facts" for Rule 12(b)(6) purposes may, or may not, be the actual facts. *See, e.g.*, *Williams v. Mohawk Industries, Inc*., 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

## II.  FACTS AS ALLEGED

Mark Tinsley entered Limestone Correctional Facility during September of 2012 to serve a twelve-year prison sentence.[2] For several years prior to his incarceration, and at the direction of his physician, Tinsley had been using on a daily basis a Continuous Positive Airway Pressure ("C-PAP") machine to prevent the

---

[2] Doc. no. 1 (Complaint), ¶ 28.

collapse of his airway.[3] He also had been suffering from hypertension, obstructive sleep apnea, asthma, and atrial fibrillation.[4]

Limestone Correctional Facility requires each new prisoner to undergo, within fourteen days of arrival, a complete health evaluation by a medical professional, including laboratory analyses and an assessment of medical history.[5] When Tinsley entered the facility, he was placed in the Protective Custody Unit "due to his law enforcement background."[6] Tinsley began requesting his C-PAP machine immediately upon his placement in the Protective Custody Unit.[7] He submitted numerous formal, written requests for the machine from November of 2012 until his death in November of the following year.[8] Even so, defendants repeatedly denied Tinsley's requests for a C-PAP machine, and refused to provide him with his prescription medications.[9]

---

[3] *Id.* ¶ 34.

[4] *Id.* ¶ 29.

[5] *Id.* ¶ 31.

[6] *Id.* ¶ 35. Plaintiff did not provide any additional details regarding Tinsley's law enforcement background. *See id.* Even so, Tinsley's obituary, from *The Daily Home* newspaper published in Sylacauga, Alabama, indicates that his law enforcement career spanned thirty-three years, during which he served in "such positions as a police officer, officer with [the] Bureau of Prisons, and bailiff with the Birmingham court system." *Mark Luke Tinsley: Obituary*, THE DAILY HOME, Nov. 19, 2013, http://www.legacy.com/obituaries/dailyhome/obituary.aspx?n=mark-luke-tinsley&pid=168088233& (alteration supplied) (last visited Mar. 2, 2015).

[7] Doc. no. 1 (Complaint), ¶ 36.

[8] *Id.* ¶¶ 37–38.

[9] *Id.* ¶ 38.

Mark Tinsley's requests for medical care became so frequent that other inmates in the Limestone Correctional Facility began submitting requests for medical care on his behalf.[10] In response, defendants transferred Tinsley to another cell, to prevent other inmates from hearing his labored breathing.[11]

Mark Tinsley became so ill during the two weeks preceding his death that he was unable to move or breathe. During that time, he submitted several verbal and written requests for emergency medical care, all of which were denied.[12] On one such occasion, Tinsley pleaded for help with the defendant identified in the pleadings only as "Nurse Jackson," but Jackson instructed him to "fill out a sick call slip."[13] A few days before his death, Tinsley began coughing up blood and became immobile. When a correctional officer observed Tinsley's physical condition, he instructed another inmate in Tinsley's cell to have Tinsley fill out a sick call slip.[14] Tinsley's cellmate responded that, if the officer did not take Tinsley to the infirmary, then the other inmates were going to "yell all night until Tinsley got medical help."[15]

Tinsley was physically escorted to the infirmary on November 4, 2013, because

---

[10] *Id.* ¶ 39.

[11] *Id.* ¶ 40.

[12] *Id.* ¶ 41.

[13] Doc. no. 1 (Complaint), ¶ 45.

[14] *Id.* ¶ 46.

[15] *Id.*

he was unable to walk without assistance.[16] Defendants held Tinsley in the infirmary for two days before transporting him to Crestwood Medical Center in Huntsville, Alabama, where he was admitted for pulmonary edema and hypoxia.[17] Tinsley remained at Crestwood Medical Center from November 6, 2013 until his death on November 15, 2013.[18] The causes of death listed on his death certificate were cardiopulmonary arrest, adult acute respiratory distress syndrome, and pneumonia.[19]

### III. DISCUSSION

Defendants contend that all claims asserted against the Limestone Correctional Facility should be dismissed because the facility is not an entity capable of being sued, and plaintiff agrees.[20] Accordingly, all claims asserted against Limestone Correctional Facility are due to be dismissed.

---

[16] *Id.* ¶ 47.

[17] *Id.* ¶¶ 48–49.

[18] *Id.* ¶ 50.

[19] Doc. no. 1 (Complaint), ¶ 50.

[20] Doc. no. 15 (Brief on Motion to Dismiss), at 1; doc. no. 22 (Response to Motion to Dismiss), at ECF 7. "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically. *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

Defendants next argue that all fictitious defendants should be stricken.[21] "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (*per curiam*). Even so, the Eleventh Circuit has carved out an exception to that rule: *i.e.*, when the plaintiff's description of the fictitious defendant is so specific as to render that defendant's name "at the very worst, surplusage." *Dean v. Barber*, 951 F.2d 1210, 1216 n.6 (11th Cir. 1992). Defendants contend that two individuals at Limestone Correctional Facility fit plaintiff's description of "Captain," two fit her description of "Shift Commander," two fit her description of "supervisors," four fit her description of "Officer Johnson," and twenty-six fit her description of "corrections officer."[22] This court concludes that plaintiff has not described the fictitious party-defendants in her complaint with sufficient specificity as to render their names mere surplusage. Accordingly, all claims against fictitious party-defendants are due to be stricken.

Defendants next contend that plaintiff's claims for money damages against defendants "in their *official* capacities" are barred by the Eleventh Amendment and state law sovereign immunity.[23] The court agrees. *See Kentucky v. Graham*, 473 U.S.

---

[21] Doc. no. 14 (Motion to Dismiss), at 1.

[22] *Compare* doc. no. 15 (Brief on Motion to Dismiss), at 3, *with* doc. no. 1 (Complaint), at ¶¶ 14–15, 22–24.

[23] Doc. no. 14 (Motion to Dismiss), at 2 (emphasis in original).

159, 171 n.14 (1985). Plaintiff also concedes that "a suit against Defendants in their official capacities may only be for prospective equitable relief."[24] Accordingly, all claims for money damages asserted against defendants in their *official* capacities are due to be dismissed.

Defendants next contend that "the complaint, replete with allegations made against 'defendants' generally, fails to state a claim against any specific defendant and fails to put particular defendants on notice of their alleged liability-creating activity."[25] Indeed, plaintiff's complaint alleges that "Defendants" altered Tinsley's medication, and that "Defendants" refused Tinsley's requests for medical equipment and treatment.[26] Even so, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) (alteration supplied). Reading each allegation made against "defendants" as an allegation made against each defendant individually, this court concludes that the complaint puts each defendant on notice of the allegations made against him or her. Accordingly, defendants' motion to dismiss for lack of notice is due to be denied.

---

[24] Doc. no. 22 (Response to Motion to Dismiss), at ECF 13.

[25] Doc. no. 15 (Brief on Motion to Dismiss), at 3.

[26] Doc. no. 1 (Complaint), ¶¶ 37–38.

The complaint asserts an Eighth Amendment claim of deliberate indifference to the serious medical needs of plaintiff's decedent.[27] The Eleventh Circuit addressed the adequacy of such claims in *Richardson v. Johnson*, 598 F.3d 734 (11th Cir. 2010) (*per curiam*), saying that:

> To state an Eighth Amendment claim under § 1983, a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Under the objective component, a prisoner must allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety. To satisfy the subjective component, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotation marks and citations omitted).

*Richardson*, 598 F.3d at 738. Defendants contend that plaintiff has failed to state a claim of deliberate indifference because she has not alleged facts that plausibly could show that defendants had "prior notice or knowledge."[28] However, the Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that the issue of "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial

---

[27] *Id.* ¶¶ 51–56.

[28] Doc. no. 15 (Motion to Dismiss Brief), at 5.

evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citation omitted). Plaintiff's complaint alleges circumstantial evidence of defendants' subjective knowledge: *i.e.*, defendants were required to conduct a health examination of Tinsley within fourteen days of his arrival; they were required to review his medical history; and, Tinsley submitted numerous written and verbal requests for emergency medical treatment.[29] A finder of fact could infer from that circumstantial evidence that defendants had subjective knowledge of a risk of serious harm to Tinsley. Further, and as previously stated, allegations made against multiple defendants usually are treated as allegations against each defendant individually. Accordingly, this court concludes that plaintiff has alleged facts that plausibly could establish the first element of a claim of deliberate indifference: *i.e.*, subjective knowledge of a risk of serious harm. Plaintiff also alleges that "Defendants" altered Tinsley's medications and refused to provide him with medical treatment or a C-PAP breathing machine.[30] Accordingly, plaintiff has alleged facts that plausibly could establish the second element of a claim of deliberate indifference: *i.e.*, disregard of a risk of serious harm. Finally, plaintiff has alleged that defendants' conduct

---

[29] *Id.* ¶ 38.

[30] *Id.*

"constitutes [an] unnecessary and wanton infliction of pain."[31]  That allegation plausibly could establish the third element of deliberate indifference: *i.e.*, conduct that is more than negligence.  Accordingly, plaintiff has stated a plausible claim for deliberate indifference against defendants, and their motion to dismiss that claim is due to be denied.

Defendants also move to dismiss all of plaintiff's claims for injunctive relief on the ground that plaintiff lacks standing to seek such relief.[32]  The court agrees. The Supreme Court held in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), that a plaintiff may pursue injunctive relief only when she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* at 101–02 (internal quotation marks omitted).  Here, plaintiff proceeds individually and as administrator of Tinsley's estate.  Plaintiff has not alleged that she has either sustained, or is immediately in danger of sustaining, some direct injury as a result of defendants' conduct, nor has she alleged that Tinsley's estate is immediately in danger of sustaining some direct injury. Accordingly, plaintiff lacks standing to bring claims for injunctive relief, and

---

[31] *Id.* ¶ 55.

[32] Doc. no. 15 (Motion to Dismiss Brief), at 5.

defendants' motion as to those claims is due to be granted. *See Golthy v. Alabama*, 287 F. Supp. 2d 1259, 1263 (M.D. Ala. 2003) (Albritton, J.) (finding no standing for injunctive relief when administratrix had shown no immediate danger to decedent's estate).

### IV.  CONCLUSION AND ORDERS

In accordance with the foregoing, it is ORDERED that the motion to dismiss filed by defendants Dewayne Estes, Ruth Naglich, Guy Noe, Jimmy Patrick, and Kim T. Thomas is GRANTED in part and DENIED in part.  The motion as to Limestone Correctional Facility is GRANTED, and all claims asserted against that entity are DISMISSED with prejudice.  The motion based upon defendants' sovereign immunity is GRANTED, and all claims for money damages asserted against the above-named defendants in their official capacities are DISMISSED with prejudice. The motion as to plaintiff's claims for injunctive relief also is GRANTED, and all claims for injunctive relief asserted against the above-named defendants are DISMISSED with prejudice. The motion to dismiss claims asserted against fictitious defendants is GRANTED, and those claims are STRICKEN.  The motion is denied in all other respects. Defendants are allowed fourteen days from the date of this order to file answers to plaintiff's complaint.

**DONE** and **ORDERED** this 2nd day of March, 2015.

/s/ Lynwood Smith
_____
United States District Judge